UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-61761-ROSENBERG/AUGUSTIN-BIRCH

JWR CONSTRUCTION, INC.,

     Plaintiff,

v.

UNITED STATES FIRE INSURANCE
COMPANY,

     Defendant.

_____/

### REPORT AND RECOMMENDATION ON AMERICAN IMPACT
### WINDOWS AND DOORS LLC'S MOTION TO INTERVENE [DE 13]

This cause comes before the Court on American Impact Windows and Doors LLC's ("the Prospective Intervenor") Motion to Intervene. DE 13. The Honorable Robin L. Rosenberg, United States District Judge, has referred the Motion to the undersigned United States Magistrate Judge for appropriate disposition. DE 14. The Court has carefully considered the Motion, the record, and is otherwise fully advised. For the reasons set forth below, the Court **RECOMMENDS** that the Prospective Intervenor's Motion be **GRANTED**.

## I. Background

The controversy in this case stems from the construction of the Seven on Seventh property located in Fort Lauderdale. *See* DE 1 ¶¶ 7–8. Plaintiff JWR Construction Services, Inc., as prime contractor, entered into a construction contract with the owner of the property, and Plaintiff subsequently subcontracted with the Prospective Intervenor. *Id.* ¶¶ 8–9. Under the subcontract, the Prospective Intervenor was to provide all the required labor, material, and equipment necessary to install windows and storefronts for the construction project. *Id.* ¶ 9. Additionally, the Prospective

Intervenor, as the principal, and Defendant United States Fire Insurance Company, as the surety, executed and issued Plaintiff a Performance Bond, binding the Prospective Intervenor and Defendant, jointly and severally, to Plaintiff for performance of the subcontract. *Id.* ¶ 10; DE 1-1.

Unfortunately, the construction project was damaged after the torrential rain in Fort Lauderdale on April 12, 2023. DE 1 ¶ 11. As Plaintiff alleges in its complaint, the Prospective Intervenor's "defective and deficient work under the Subcontract" was to blame for the damage. *Id.* Plaintiff claims it notified the Prospective Intervenor of the damage the next day and demanded that the Prospective Intervenor "reimburse, indemnify, and hold harmless [Plaintiff] for all damages stemming from" the Prospective Intervenor's allegedly defective and deficient installation and supply of the windows for the construction project. *Id.* ¶¶ 11–12. Because the Prospective Intervenor apparently neither reimbursed nor indemnified Plaintiff, Plaintiff contends that the Prospective Intervenor materially breached the subcontract. *Id.* ¶ 19. Plaintiff asserts it thereafter notified the Prospective Intervenor and Defendant that it could declare the Prospective Intervenor in default under the subcontract on July 17, 2023, before eventually declaring the Prospective Intervenor in default on July 31, 2023. *Id.* ¶¶ 20–21. After declaring the Prospective Intervenor in default, Plaintiff states it offered to pay the subcontract balance to Defendant or to a contractor selected by Defendant to perform in the Prospective Intervenor's place, but Plaintiff avers that Defendant denied liability under the Performance Bond. *Id.* ¶ 23. As a result, Plaintiff filed a one-count breach of contract complaint against Defendant. DE 1.

Not being named in the complaint, the Prospective Intervenor now seeks to intervene as a defendant/ third-party plaintiff and has filed the present Motion to Intervene. DE 13. In its Motion, the Prospective Intervenor seeks to intervene, as a matter of right or permissively, and to assert

defenses under the subcontract as well as third-party claims against the manufacturers of the allegedly defective windows. *Id.* at 2.

## II. Analysis

Federal Rule of Civil Procedure 24 permits two types of intervention: intervention of right and permissive intervention. To intervene as a matter of right, a prospective intervenor must file a timely motion and must either present a federal statute providing an unconditional right to intervene or establish the following prerequisites: (1) an interest relating to the property or transaction which is the subject of the action; (2) that the prospective intervenor is so situated that disposition of the action, as a practical matter, may impede or impair its ability to protect that interest; and (3) that the prospective intervenor is not adequately represented by the existing parties to the suit. Fed. R. Civ. P. 24(a)(1)–(2); *see also Purcell v. BankAtlantic Fin. Corp.*, 85 F.3d 1508, 1512 (11th Cir. 1996). "Once a party establishes all the prerequisites to intervention, the district court has no discretion to deny the motion." *United States v. State of Ga.*, 19 F.3d 1388, 1393 (11th Cir. 1994).

Alternatively, to intervene permissively, a prospective intervenor must file a timely motion and either provide a federal statute affording a conditional right to intervene or must demonstrate that it has a claim or defense that shares a common question of law or fact with the main action. Fed. R. Civ. P. 24(b)(1)(A)–(B). Unlike intervention of right, permissive intervention is discretionary, and courts must consider whether permissive intervention will unduly delay or prejudice the adjudication of the original parties' rights. Fed. R. Civ. P. 24(b)(3); *see also Purcell*, 85 F. 3d at 1513 ("[I]t is wholly discretionary with the court whether to allow intervention under Rule 24(b) and even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied, the court may refuse to allow intervention." (quoting *Worlds v. Dep't of Health & Rehab. Servs., State of Fla.*, 929 F.2d 591, 595 (11th Cir. 1991))).

3

Here, the Prospective Intervenor requests to intervene as a matter of right or, in the alternative, permissively. DE 13 at 2. Because the Prospective Intervenor can establish each of the prerequisites for intervention of right, it must be allowed to intervene in this litigation.

**A. The Prospective Intervenor Must be Allowed to Intervene as a Matter of Right**

As previously delineated, absent a federal statute permitting intervention of right, the prospective intervenor seeking intervention of right must establish that: (1) its motion to intervene is timely; (2) it has an interest relating to the property or transaction which is the subject of the underlying action; (3) it is situated so that disposition of the action may impede or impair its ability to protect that interest; and (4) its interest is not adequately represented by the existing parties to the suit. *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989). Although Plaintiff primarily objects to the Prospective Intervenor's intervention based on the fourth element, DE 21 at 4–6, the Court will review each of these elements in turn.

**1. The Prospective Intervenor's Motion is Timely**

When reviewing the first element—timeliness—courts "must consider the length of time during which the [prospective intervenor] knew or reasonably should have known of their interest in the case before moving to intervene." *Chiles*, 865 F.2d at 1213. Additionally, courts must analyze "the extent of prejudice to the existing parties as a result of the [prospective intervenor's] failure to move for intervention as soon as they knew or reasonably should have known of their interest." *Id.* "Timeliness is not a word of exactitude or of precisely measurable dimensions. The requirement of timeliness must have accommodating flexibility toward both the court and the litigants if it is to be successfully employed to regulate intervention in the interest of justice." *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970).

4

Here, Plaintiff filed its complaint on September 11, 2023, DE 1, and, as the Prospective Intervenor avers, it was only informed of the complaint on September 25, 2023, via an email from Defendant. DE 13 at 6. Therefore, when the Prospective Intervenor filed its Motion to Intervene on October 27, 2023, DE 13, only a mere 32 days had elapsed since the Prospective Intervenor became aware of this litigation. Furthermore, discovery in this case is still in its infancy and the deadline for joinder of additional parties had not expired by the time the Prospective Intervenor filed its Motion to Intervene. *See* DE 16 at 3–4. As such, the Court finds that the Prospective Intervenor's Motion is timely and that the existing parties will suffer no prejudice from the Prospective Intervenor not having moved to intervene sooner. *See Chiles*, 865 F.2d at 1213 (finding motion to intervene timely when it was filed seven months after the complaint and before any discovery had begun); *Hart Mech. Contractors, Inc. v. Fed. Ins. Co.*, No. 22-21390-CIV, 2022 WL 18465613, at *2 n.3 (S.D. Fla. Oct. 14, 2022) (finding motion to intervene timely when filed before deadline to amend pleadings and join parties); *Rinaldi Enters. of Fla., LLC v. U.S. Fire Ins. Co.*, No. 23-CV-21495, 2023 WL 7495092, at *3 (S.D. Fla. Nov. 13, 2023) (same).

## 2. The Prospective Intervenor has an Interest in the Underlying Action

Concerning the second element— an interest relating to the property or transaction which is the subject of the underlying action—a prospective intervenor must have a "direct, substantial, legally protectible interest in the proceeding." *Chiles*, 865 F.2d at 1213 (quoting *Athens Lumber Co. v. Fed. Election Comm'n*, 690 F.2d 1364, 1366 (11th Cir. 1982)). Courts review this second element under a flexible approach, focusing on the particular facts and circumstances surrounding a motion to intervene. *United States v. Perry Cnty. Bd. of Educ.*, 567 F.2d 277, 279 (5th Cir. 1978) (quoting *United States v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826, 841 (5th Cir. 1975)).

Here, the Prospective Intervenor proclaims an interest in the underlying litigation on account of its obligation to indemnify Defendant. DE 13 at 7. In particular, the Prospective Intervenor highlights the General Indemnity Agreement ("GIA") it signed in order to have Defendant serve as a surety for the Performance Bond. *Id.* at 3. Within the GIA, the Prospective Intervenor agreed to the following provision:

> **5. <u>Indemnification and Hold Harmless</u>.** The Indemnitors hereby jointly and severally covenant, promise and agree to exonerate, defend, indemnify and hold harmless Company from and against any and all Loss, irrespective of whether Company has made any payment under any of its Bonds or whether the Indemnitors may have assumed, or offered to assume, the defense of Company upon any claim. Company shall be entitled to immediate reimbursement for any and all Loss incurred by it in good faith and under the belief that it was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such payments. An itemized, sworn statement of Loss by an employee of Company, or other evidence of payment, shall be *prima facie* evidence of the propriety, amount and existence of Indemnitors' liability. Indemnitors shall pay to Company interest on all disbursements made by Company at the maximum rate permitted by law, calculated from the date of each such disbursement. The Indemnitors will, at the request of the Company, procure the discharge of the Company from any Bond and all liability by reason thereof.

DE 13-3 at 2. The GIA also defined "Company" as meaning Defendant and "Loss" as referring to "all demands, liabilities, losses, costs, damages and expenses of any kind of nature, including legal fees and expense, court costs . . . all loss and expenses incurred by reason of . . . Company's prosecuting or defending any action in connection with any Bond . . . ." *Id.* at 1–2.

Given the GIA and Performance Bond, the Prospective Intervenor has a direct, substantial, legally protectible interest in the pending litigation. *See Hart Mech. Contractors, Inc.*, 2022 WL 18465613, at *2 n.3 ("The second factor is satisfied because the General Agreement of Indemnity . . . between [the prospective intervenor] and the Defendant Surety requires [the prospective intervenor] to indemnify Defendant for any liability on the Bond. That suffices."); *Rinaldi Enters. of Fla., LLC*, 2023 WL 7495092, at *3 ("The second factor is satisfied because [the prospective intervenor] is obliged to indemnify Defendant . . . under the General Indemnity Agreement."); *Revere Copper &*

*Brass, Inc. v. Aenta Cas. & Sur. Co.*, 426 F.2d 709, 716 (5th Cir 1970) ("It is well established that a contractor who has agreed to indemnify his surety on a performance bond can intervene as a party defendant as of right in a suit on the performance bond against the surety . . . ."); *see also Atl. Refinishing & Restoration, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 272 F.R.D. 26, 29 (D.D.C. 2010) ("Additionally, the petitioner, as the principal of the payment bond, has a clear interest in this litigation because if a judgment is granted against the defendant, the defendant is likely to seek indemnification from the petitioner, pursuant to their surety agreement."). Therefore, the second element is satisfied.

### 3. Disposition of This Action may Impede or Impair the Prospective Intervenor's Ability to Protect its Interest

As for the third element— whether the prospective intervenor is situated so that disposition of the action may impede or impair its ability to protect its interest—courts examine whether a prospective intervenor can protect its interest absent intervention. *See Chiles*, 865 F.2d at 1214; *Hart Mech. Contractors, Inc.*, 2022 WL 18465613, at *3. For example, in *Hart Mechanical Contractors*, the subcontractor on a construction project sued the defendant insurance company that served as the surety for the performance bond issued for the project, and the general contractor, who was the principal on the performance bond, sought to intervene. 2022 WL 18465613, at *1. The general contractor argued that, unless it was able to intervene, it would not be able to protect its interests as principal on the performance bond, and the *Hart* court agreed. *Id.* at *3. Specifically, the court agreed because the general contractor and defendant insurance company had a similar indemnity agreement as the one here, which would make the general contractor liable to the defendant insurance company should the plaintiff prevail. *Id.* And if the subcontractor plaintiff prevailed against the defendant insurance company, the general contractor could be found liable to the defendant insurance company without having the opportunity to dispute its liability. *Id.* Thus, the *Hart* court determined that the

general contractor had satisfied the third element. *Id.*; *see also Rinaldi Enters. of Fla., LLC*, 2023 WL 7495092, at *3 (agreeing with the *Hart* court's analysis of the third element); *Atl. Refinishing & Restoration, Inc.*, 272 F.R.D. at 30 ("[I]f the petitioner was not allowed to intervene, it could nonetheless be forced to indemnify the defendant for the debt claimed by the plaintiff without an opportunity to legally dispute its liability. Thus, the practical consequence of denying intervention would be to deprive the petitioner of an opportunity to raise arguments and defenses before the adjudication of its own liability to the plaintiff.").

Similar considerations are at play here. Pursuant to the GIA, the Prospective Intervenor must indemnify Defendant if Plaintiff prevails in this litigation. *See* DE 13-3 at 2. And if the Prospective Intervenor is not permitted to participate in this litigation, it would be deprived of the opportunity to defend itself and Defendant against Plaintiff's allegations. However, if the Prospective Intervenor is allowed to defend itself and succeeds, it could ultimately prevent liability to Defendant under the GIA. Therefore, if the Prospective Intervenor is not allowed to intervene, its ability to prevent liability to Defendant may be impaired. As a result, the Court finds that the Prospective Intervenor has established that the disposition of this litigation may impede or impair the Prospective Intervenor's ability to protect its interest.

### 4. Defendant Does not Adequately Represent the Prospective Intervenor's Interests

The last element necessary for intervention—whether the prospective intervenor's interests are adequately represented by an existing party in the suit—carries a minimal burden. *Chiles*, 865 F.2d at 1214 (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)); *Stone v. First Union Corp.*, 371 F.3d 1305, 1311 (11th Cir. 2004) (noting prospective intervenor need only demonstrate that current party's representation "may be inadequate" and this burden is "minimal"). "There is 'a presumption of adequate representation where an existing party seeks the same objectives

as the interveners[,]' but the 'presumption is weak and can be overcome if the [interveners] present some evidence to the contrary.'" *Hart Mech. Contractors, Inc.*, 2022 WL 18465613, at *3 (first alteration in original) (quoting *Stone*, 371 F.3d at 1311). Once a prospective intervenor overcomes this presumption, the general rule is then "that adequate representation exists [1] if no collusion is shown between the representative and an opposing party, [2] if the representative does not have or represent an interest adverse to the proposed intervener, and [3] if the representative does not fail in fulfillment of his duty." *Stone*, 371 F.3d at 1311 (quotation marks omitted). The Prospective Intervenor meets its minimal burden here.

Although Plaintiff argues the Prospective Intervenor and Defendant share the same objective, defending against Plaintiff's damages claim, that is insufficient to demonstrate that Defendant will adequately represent the Prospective Intervenor's interest. *See Chiles*, 865 F.2d at 1214 ("The fact that the interests are similar does not mean that approaches to litigation will be the same." (citing *Trbovich*, 404 U.S. at 539)). For instance, the Prospective Intervenor and Defendant could have divergent interests regarding settlement. Pursuant to the GIA, Defendant can unilaterally settle any claim brought against it under the Performance Bond—unless the Prospective Intervenor requests in writing for Defendant to litigate, defend, or appeal any claim and simultaneously deposits cash or collateral satisfactory to Defendant to be used in paying any judgment rendered—and Defendant's "decision to adjust, settle or compromise any Claim shall be final and binding upon" the Prospective Intervenor. DE 13-3 at 2. Consequently, Defendant, knowing that it can later seek indemnification from the Prospective Intervenor, might not be able to adequately represent the Prospective Intervenor's interest when deciding whether to settle with Plaintiff. Additionally, if Plaintiff prevails against Defendant, Defendant could seek indemnification from the Prospective Intervenor under the GIA, which would directly pit the Prospective Intervenor and Defendant's interests against each

other. These factors are sufficient to satisfy the fourth element. *See Hart Mech. Contractors, Inc.*, 2022 WL 18465613, at *4 (finding indemnity agreement created a risk that prospective intervenor's interest may be compromised where the prospective intervenor was liable under an indemnity agreement to defendant for all sums paid by the defendant to settle the case); *Rinaldi Enters. of Fla., LLC*, 2023 WL 7495092, at *3 (relying on *Hart*'s analysis); *see also Sierra Club, Inc. v. U.S. Army Corps of Eng'rs*, No. 308-CV-750-J-25TEM, 2009 WL 2525481, at *2 (M.D. Fla. Aug. 17, 2009) ("[The prospective intervenor's] financial interests may not adequately be represented by the existing parties.").

Moreover, the Prospective Intervenor is seeking to bring a third-party complaint against the manufacturers of the allegedly defective windows, DE 13-2, whereas Defendant has not done so to this point. This is not to say that Defendant has waived the opportunity to file a third-party complaint, *see* Fed. R. Civ. P. 14(a)(1) (requiring party to seek court's leave to file third-party complaint if more than 14 days after serving its answer), but this does demonstrate that Defendant may not have employed or explored all available avenues to limit or prevent liability to Plaintiff.[1] As such, this is further evidence that Defendant might not be able to adequately represent the Prospective Intervenor's interests. Therefore, based on the foregoing, the Court finds that the Prospective Intervenor's interests are not adequately represented by Defendant.

Accordingly, having established the four prerequisites for intervention as of right, the Prospective Intervenor must be allowed to intervene. *See United States*, 19 F.3d at 1393. Plaintiff, however, argues that intervention should not be allowed because the Prospective Intervenor's presence will destroy the Court's subject matter jurisdiction, DE 21 at 2–4, but this is not so.

---

[1] In addition to attaching its third-party complaint to its Motion, the Prospective Intervenor argues that Defendant does not have the ability to assert the same third-party claims. DE 13 at 11. Plaintiff does not argue in response that Defendant can bring the third-party claims against the window manufacturers. *See* DE 21.

**B. The Prospective Intervenor's Intervention Would not Destroy the Court's Subject Matter Jurisdiction**

Plaintiff, a citizen of Florida, brings its case against Defendant, a citizen of Delaware and New Jersey, under the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. DE 1 at 1. The Prospective Intervenor is also a citizen of Florida, DE 13 at 13, but its intervention would not divest the Court of subject matter jurisdiction because the Court can exercise supplemental jurisdiction. Supplemental jurisdiction under 28 U.S.C. § 1367 can be exercised over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." "Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." *Id.* However, a court cannot exercise supplemental jurisdiction over the following claims when original jurisdiction is founded on 28 U.S.C. § 1332: (1) "claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure," (2) "claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules," or (3) claims brought by persons "seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332." 28 U.S.C. § 1367(b).[2] As made clear by the structure and language of section 1367, "Congress was wary of gamesmanship on the part of plaintiffs, not defendants," attempting to evade the jurisdictional requirements of diversity jurisdiction. *PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1312 (11th Cir. 2016).

Here, since the Prospective Intervenor is seeking to intervene as a defendant, 28 U.S.C. §1367(b)'s exceptions to supplemental jurisdiction do not apply. *See, e.g.*, *Hart Mech. Contractors, Inc.*, 2022 WL 18465613, at *5 (agreeing with other courts that have held that supplemental jurisdiction exists for a nondiverse intervenor defendant who is not an indispensable party); *Rinaldi*

---

[2] A court can also decline to exercise supplemental jurisdiction under 28 U.S.C. §1367(c) for reasons not applicable here.

*Enters. of Fla., LLC*, 2023 WL 7495092, at *6 (finding intervention of a non-diverse defendant would be "no bar to the exercise of supplemental jurisdiction"); *Blue Heron Beach Resort Dev., LLC v. Branch Banking & Tr. Co.*, No. 6:13-cv-372, 2013 WL 12161446, at *9 (M.D. Fla. May 15, 2013) ("And, while not addressed by the Eleventh Circuit Court of Appeals, other federal circuit courts have found that supplemental jurisdiction over a nondiverse defendant intervenor is proper, but only so long as the intervening defendant is not indispensable."); *In re Olympic Mills Corp.*, 477 F.3d 1, 12 (1st Cir. 2007) ("[T]he weight of authority holds that claims launched by necessary but dispensable, nondiverse defendant-intervenors do not defeat the original jurisdiction (diversity) that obtained at the commencement of the action."). Moreover, because the Prospective Intervenor is a joint obligor— that is to say, it and Defendant are jointly obliged to Plaintiff on account of the Performance Bond— it is not an indispensable party. *See Hart Mech. Contractors, Inc.*, 2022 WL 18465613, at *5 ("Joint obligees are indispensable parties in breach-of-contract actions, and joint obligors are not." (citing *Brackin Tie, Lumber & Chip Co. v. McLarty Farms, Inc.*, 704 F.2d 585, 586–87 (11th Cir. 1983))). Therefore, the Court can exercise supplemental jurisdiction over the Prospective Intervenor.

Additionally, a plain reading of section 1367 also permits the Court to exercise supplemental jurisdiction over the Prospective Intervenor's claims against the proposed third-party defendants, one of which is also a Florida citizen. DE 13-2 at 2. Again, the Prospective Intervenor is seeking to intervene as a defendant, and bringing a third-party claim does not transform the Prospective Intervenor into a plaintiff for purposes of supplemental jurisdiction. *See PTA-FLA, Inc.*, 844 F.3d at 1311 ("[T]he defendant in the original action[] does not become a plaintiff by merely asserting a claim against the Joined Parties." (citing Charles Alan Wright & Arthur R. Miller, 13D Federal Practice and Procedure § 3567.2 (3d ed. 2004) ("[I]t is clear that a defendant or third-party defendant does not become a 'plaintiff' for purposes of § 1367(b) by asserting a claim."))). And section 1367(b) imposes

no jurisdictional limitations on claims brought by a defendant; instead, section 1367(b) only denies supplemental jurisdiction when a plaintiff attempts to bring a third-party claim against a nondiverse third-party. *Cf. Robert F. Wilson, Inc. v. Batson Cook Co.*, 688 F. Supp. 597, 598 (S.D. Fla. 1988) (concluding court lacked supplemental jurisdiction over plaintiff's third-party claims against nondiverse third-party defendants). Thus, the Court can exercise supplemental jurisdiction over the Prospective Intervenor and its claims against the proposed third-party defendants. As such, the Prospective Intervenor's intervention and third-party complaint would not divest the Court of subject matter jurisdiction.

Nonetheless, Plaintiff contends that the Prospective Intervenor's intervention would destroy jurisdiction because Plaintiff would be forced to bring compulsory counterclaims against the Prospective Intervenor should it intervene, which the Court would not have supplemental jurisdiction over under section 1367. DE 21 at 2. As support for its position, Plaintiff unpersuasively cites *Coltin Electric, Inc. v. Continental Casualty Co.*, No. CIV.A. 12-0532-KD-B, 2013 WL 1150920, at *3 (S.D. Ala. Mar. 19, 2013), a case where the court denied a prospective intervenor's motion to permissively intervene on the basis that doing so would prevent the plaintiff from asserting counterclaims against the nondiverse prospective intervenor due to a lack of supplemental jurisdiction over those claims. That case is clearly distinguishable from the case at hand, since it is the Court's recommendation that the Prospective Intervenor must be allowed to intervene as a matter of right, the analysis of which involves different considerations. *See Stallworth v. Monsanto Co.*, 558 F.2d 257, 265 (5th Cir. 1977) ("Since a similar provision is not included in section (a) of the Rule, it is apparent that prejudice to the existing parties other than that caused by the would-be intervenor's failure to act promptly was not a factor meant to be considered where intervention was sought under section (a)."); *compare* Fed. R. Civ. P. 24(b)(3) (requiring court to consider whether permissive intervention will prejudice the

original parties), *with* Fed. R. Civ. P. 24(a) (not requiring court to consider prejudice to existing parties, outside of ensuring the motion to intervene is timely).

Moreover, to the extent Plaintiff has any compulsory counterclaims to raise against the Prospective Intervenor, the Court is not convinced that the inability to bring such a counterclaim would prejudice Plaintiff. First, contrary to Plaintiff's assertion, it would not be "forced" to bring a compulsory counterclaim against the Prospective Intervenor in the sense that the Court would order or require Plaintiff to do so. A compulsory counterclaim is compulsory only insofar as it needs to be raised in order to prevent the claim from being barred in subsequent litigation. *See Baker v. Gold Seals Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974). Therefore, Plaintiff would not be mandated to raise a counterclaim against the Prospective Intervenor.

Secondly, if Plaintiff is denied the opportunity to bring a compulsory counterclaim against the Prospective Intervenor due to a lack of jurisdiction, that is the cost of litigating in a federal court of limited jurisdiction. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 376 (1978) ("A plaintiff cannot complain if ancillary jurisdiction does not encompass all of his possible claims in a case such as this one, since it is he who has chosen the federal rather than the state forum and must thus accept its limitations."). Moreover, any complaint from Plaintiff would ring hollow, seeing as it was and seemingly still is willing to proceed with this litigation without the Prospective Intervenor's presence. Indeed, Plaintiff correctly points out that the Prospective Intervenor is not an indispensable party and that it can consequently seek the relief it requests from Defendant without needing to also sue the Prospective Intervenor. *See* DE 21 at 4 ("JWR has the right to sue [Defendant] without naming the Prospective Intervenor as a party . . . ."). As such, if Plaintiff does not need to sue the Prospective Intervenor in order to obtain the relief it seeks, it stands to reason that Plaintiff will not be prejudiced if it cannot raise a compulsory counterclaim against the Prospective Intervenor. Consequently,

although it is not pertinent to the Prospective Intervenor's intervention of right, Plaintiff will not be prejudiced by the Prospective Intervenor's intervention.

### III. Conclusion

For the foregoing reasons, the Court **RECOMMENDS** that the Prospective Intervenor's Motion to Intervene [DE 13] be **GRANTED**.

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations.  28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(a).  The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation.  11th Cir. R. 3-1 (2014).

**DONE AND SUBMITTED** in Chambers at Fort Lauderdale, Florida, this 6th day of December, 2023.

PANAYOTTA AUGUSTIN-BIRCH
UNITED STATES MAGISTRATE JUDGE